**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **JAMES ALLEN HARRIS,** | § | |
| **Petitioner,** | § | |
| | § | |
| **V.** | § | **A-14-CA-841-SS** |
| | § | |
| **WILLIAM STEPHENS, Director,** | § | |
| **Texas Dept. of Criminal Justice–** | § | |
| **Correctional Institutions Division,** | § | |
| **Respondent.** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:    THE HONORABLE SAM SPARKS
      UNITED STATES DISTRICT JUDGE

The Magistrate Judge submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(e) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas. Before the Court are Petitioner's Petitioner for a Writ of Habeas Corpus under 28 U.S.C. § 2254 (Document 1); Petitioner's Memorandum of Law in Support (Document 1-1); Respondent's Answer (Document 6); and Petitioner's response thereto (Document 8). Petitioner, represented by counsel, has paid the filing fee for his application. For the reasons set forth below, the undersigned finds that Petitioner's petitioner should be denied.

**STATEMENT OF THE CASE**

**A.    Petitioner's Criminal History**

According to Respondent, the Director has lawful and valid custody of Petitioner pursuant to a judgment and sentence of the 277th District Court of Williamson County, Texas, in case number 09-147-K277. A jury found Petitioner guilty of two counts of aggravated assault, and the court sentenced him to two concurrent sentences of 75 years' imprisonment.

The Third Court of Appeals affirmed Petitioner's conviction. *Harris v. State*, No. 03-10-00174-CR, 2012 WL 1449337 (Tex. App.—Austin, Apr. 6, 2012).  The Court of Criminal Appeals refused his petition for discretionary review. *Harris v. State*, PDR No. 0517-12 (Tex. Crim. App. Oct. 3, 2012).

Petitioner then filed a state application for a writ of habeas corpus.  The trial court requested proposed findings of fact from both parties but then forwarded the case to the Texas Court of Criminal Appeals without adopting either party's submissions.  On August 20, 2014, the Court of Criminal Appeals denied the application without a written order.  *Ex Parte Harris*, No. WR–81,613-01, at cover.

**B.     Factual Background**

On February 2, 2008, Petitioner crashed his truck into two other vehicles. *Harris*, 2012 WL 1149337, at *1.  A deputy sheriff who witnessed the accident testified at Petitioner's trial that Petitioner was traveling northbound on U.S. Route 183 at a fast speed.  Doc. 4-11 at 13.  Petitioner was in the center turning lane of Route 183, as was a black Chevrolet Tahoe. *Id.*  Seemingly in an attempt to avoid hitting the Tahoe, Petitioner swerved his truck into oncoming traffic. *Id.* at 13–14. He swerved back into the turn lane and then, in another apparent attempt to avoid a collision, clipped the back of a Chevrolet Suburban that also was in the turn lane, veered into oncoming traffic, and collided head-on with a red Chevrolet Silverado truck. *Id.* at 14.  After tending to the occupants of the Silverado, the deputy sheriff found Petitioner walking on the highway; he said Petitioner appeared "very lethargic, very—looked lost, confused.  From my experience, I immediately thought of either some sort of severe medical condition or an intoxication . . . ." *Id.* at 15.  Petitioner was

2

taken to a hospital where he tested positive for Valium and Soma, both of which are central-nervous-system depressants. *Harris*, 2012 WL 1149337, at *1.

The State charged Petitioner with two counts each of intoxicated assault and aggravated assault but eventually dropped the intoxicated-assault charges. *Harris*, 2012 WL 1149337, at *1. Petitioner requested an instruction on the lesser-included offense of deadly conduct, but the court denied it. *Id.* The jury returned a guilty verdict on both counts of aggravated assault.

**C.      Petitioner's Grounds for Relief**

Petitioner asserts that his trial counsel was ineffective for:

      1.      failing to request a necessity instruction;

      2.      failing to object to a statement in the State's closing argument; and

      3.      failing to object to the State's comments during the penalty
                phase about Petitioner's tattoos.

**D.      Exhaustion of State Court Remedies**

There is no dispute that Petitioner has exhausted his state court remedies regarding the claims brought in this application.

<u>**DISCUSSION AND ANALYSIS**</u>

**A.      The Antiterrorism and Effective Death Penalty Act of 1996**

The Supreme Court has summarized the basic principles that have grown out of the Court's many cases interpreting the 1996 Antiterrorism and Effective Death Penalty Act. *See Harrington v. Richter*, 562 U.S. 86, 97–100 (2011). The Court noted that the starting point for any federal court in reviewing a state conviction is 28 U.S.C. § 2254, which states in part:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that

3

was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The Court noted that "[b]y its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." *Harrington*, 562 U.S. at 98.

One of the issues *Harrington* resolved was "whether § 2254(d) applies when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Id.* Following all of the Courts of Appeals' decisions on this question, *Harrington* concluded that the deference due a state court decision under § 2554(d) "does not require that there be an opinion from the state court explaining the state court's reasoning." *Id.* (citations omitted).  The Court noted that it had previously concluded that "a state court need not cite nor even be aware of our cases under § 2254(d)." *Id.* (citing *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam)).  When there is no explanation with a state-court decision, the habeas petitioner's burden is to show there was "no reasonable basis for the state court to deny relief." *Id.* And even when a state court fails to state which of the elements in a multi-part claim it found insufficient, deference is still due, because "§ 2254(d) applies when a 'claim,' not a component of one, has been adjudicated." *Id.*

As *Harrington* noted, § 2254(d) permits the granting of federal habeas relief in only three circumstances: (1) when the earlier state court's decision "was contrary to" federal law then clearly

established in the holdings of the Supreme Court; (2) when the earlier decision "involved an unreasonable application of" such law; or (3) when the decision "was based on an unreasonable determination of the facts" in light of the record before the state court. *Harrington*, 562 U.S. at 100 (citing 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). The "contrary to" requirement "refers to the holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Dowthitt v. Johnson*, 230 F.3d 733, 740 (5th Cir. 2000) (quotation and citation omitted).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than . . . [the Supreme Court] has on a set of materially indistinguishable facts.

*Id.* at 740–41 (quotation and citation omitted). Under the "unreasonable application" clause of § 2254(d)(1), a federal court may grant the writ "if the state court identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 741 (quotation and citation omitted). The provisions of § 2254(d)(2), which allow the granting of federal habeas relief when the state court made an "unreasonable determination of the facts," are limited by the terms of the next section of the statute, § 2254(e). That section states that a federal court must presume state court fact determinations to be correct, though a petitioner can rebut that presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). But absent such a showing, the federal court must give deference to the state court's fact findings. *Id.*

B.    **Ineffective Assistance of Counsel**

Petitioner argues that he was denied the effective assistance of counsel.  Petitioner raised this issue in his state application for habeas corpus.  The Court of Criminal Appeals rejected the merits of Petitioner's claim.  Thus, the AEDPA limits the scope of this Court's review to determining whether the adjudication of Petitioner's claim by the state court either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Ineffective assistance of counsel claims are analyzed under the well-settled standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984):

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant can make both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* at 687.  In deciding whether counsel's performance was deficient, the Court applies a standard of objective reasonableness, keeping in mind that judicial scrutiny of counsel's performance must be highly deferential.  *Id.* at 686–89.  "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Id.* at 689.  "Because of the difficulties inherent in making the evaluation, a court must indulge a

strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (citation omitted).  Ultimately, the focus of inquiry must be on the fundamental fairness of the proceedings whose result is being challenged. *Id.* at 695–97.  Accordingly, in order to prevail on a claim of ineffective assistance of counsel, a convicted defendant must show that (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 687.

### 1.   Failure to Request a Necessity Instruction

Petitioner first asserts his counsel was ineffective for not requesting a necessity instruction under Texas Penal Code § 9.22.  Petitioner says the evidence at his trial supported a defense of necessity.  He insists that if his attorney had requested the instruction, the trial court would have granted the request and given the instruction, which alone would have changed the result of the trial.

Texas allows the use of a necessity defense if the following conditions are met:

(1)     the actor reasonably believes the conduct is immediately necessary to avoid imminent harm;

(2)     the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct; and

(3)     a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear.

TEX. PENAL CODE § 9.22.  In addition to those three requirements, the defendant also must admit to taking the "necessary" alternative action and having the requisite mental state. *Juarez v. State*, 308 S.W.3d 398, 404 (Tex. Crim. App. 2010).  The defendant must "reasonably believe that his conduct

is immediately necessary to avoid a greater harm." *Mays v. State*, 318 S.W.3d 368, 385 (Tex. Crim. App. 2010).

The evidence in Petitioner's case did not support using the necessity defense for at least three reasons. First, Petitioner could not have reasonably believed that swerving into oncoming traffic and causing a head-on collision avoided "a greater harm" of causing only a rear-end collision with the Tahoe (or the Suburban) in the center turning lane. Alternatively, Petitioner could have attempted to stop his car and avoid any accident at all or could have swerved into the nearest northbound lane. In short, his conduct of swerving into oncoming traffic was not "immediately necessary" under § 9.22. Second, as Respondent points out, Petitioner did not admit to having the requisite mental state to commit the act that led to the accident. Though he admitted fault for the act, Petitioner argued at trial that he was merely negligent, not reckless, and was not culpable for the accident. Doc. 4-11 at 11 ("Mr. Harris is at fault in this case. The only difference is we feel like that it's an accident, that there's civil neglidence involved . . ."). Last, a necessity instruction was inconsistent with counsel's strategy at trial, which, as noted above, was that Petitioner lacked the requisite mental state to be guilty of aggravated assault.

Counsel's strategic choices are given great deference, *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002), and Petitioner has not shown that counsel's decision not to seek a necessity instruction was unreasonable. Moreover, Petitioner has not even hinted at how he was prejudiced by counsel's actions. This ground for relief fails.

2.      Failing to Object to Alleged Misstatement of Law in State's Closing Argument

Petitioner next faults counsel for not objecting to a statement by the prosecutor during his closing argument. Petitioner says the prosecutor misstated the law when he argued to the jury,

"Folks, if he has any ingested drugs in his system, he was being reckless.  That's what the law says."
Petitioner says that incorrect statement allowed the jury to conclude he was "guilty as a matter of law
which denied him a true jury determination" of whether he had acted recklessly under the facts of
the case.  Doc. 1-1 at 17.

Petitioner was charged with two counts of aggravated assault.  The indictment charged that
Petitioner had "recklessly caused bodily injury . . . by driving his vehicle into an oncoming lane of
traffic, by striking a vehicle occupied by [one of the victims], by failing to keep a proper lookout,
by operating a motor vehicle after ingesting a drug or dangerous drug, or a combination of these
acts."  Doc. 4-3 at 40.  Petitioner's counsel argued in his closing statement that Petitioner was not
impaired when he was driving his truck, and the drugs in his system reflected only therapeutic usage.
Doc. 4-13 at 23. But as the prosecutor clarified on rebuttal, Petitioner was not tried for being
intoxicated; he no longer was being charged with intoxication assault.  *Id.* at 24.  The finding that
Petitioner had ingested any amount of drugs before he drove his truck, the prosecutor correctly
explained, was sufficient to support the charges against Petitioner.

The prosecutor's attempt to state the law accurately for the jury as it was described in the
indictment was not improper.  *See Taylor v. State*, 233 S.W.3d 356, 359 (Tex. Crim. App. 2007)
(finding proper prosecutor's restatement of law during closing argument because he "did not convey
any information beyond what was properly contained in the charge").  And because the prosecutor's
statement of the law was correct, counsel's decision not to object cannot constitute deficient
performance.  *See Morlett v. Lynaugh*, 851 F.2d 1521, 1525 (5th Cir. 1988).

Even if Petitioner is correct that his counsel should have objected to the prosecutor's
statement, he does not explain how the outcome of the trial would have changed without it.

9

Numerous eyewitnesses had seen Petitioner driving recklessly before the accident, including the deputy sheriff who witnessed the accident itself.  Petitioner appeared in a "lethargic," "lost," or "confused" state after the accident, yet his treating physician testified he had no head injury.  And medical reports found both drugs in his system.  Petitioner has not shown that this one allegedly incorrect statement by the prosecutor, and not all the incriminating evidence against him, is what led to a guilty verdict. This ground for relief is without merit.

3.     Failing to Object to the State's Comments About Petitioner's Tattoos

In his final ground for relief, Petitioner asserts that his counsel ineffectively failed to object to a line of questioning by the prosecutor during the penalty phase of the trial.   While cross-examining Petitioner's father, the prosecution asked if Petitioner had any tattoos depicting swastikas or "Aryan pride" that his father could describe.  Doc. 4-13 at 42–43.  Counsel did not object to this line of questioning but did object to the prosecution's request that Petitioner show the jury his tattoos.  Petitioner says counsel's failure to object earlier constitutes ineffective assistance and prejudiced him, resulting in a higher sentence.

In support of this argument, Petitioner cites *Dawson v. Delaware*, 503 U.S. 159 (1992).  In *Dawson*, the Supreme Court held that "the receipt into evidence of the stipulation regarding [the defendant's] membership in the Aryan Brotherhood was constitutional error." *Id.* at 165.  The stipulation at issue in that case proved only that an Aryan Brotherhood prison gang existed, that it began in California in the 1960s, that it held white-supremacist beliefs, and that a different gang in Delaware prisons also called itself the Aryan Brotherhood.  *Id.*  Because none of that information had any relevance to the defendant's sentencing, the Court held, the stipulation was erroneous.

10

The Court in *Dawson*, however, also noted the "'wide range of relevant material'" a sentencing body may consider. *Dawson*, 503 U.S. at 164 (quoting *Payne v. Tennessee*, 501 U.S. 808, 820–21 (1991)).   That admissible material includes "evidence of racial intolerance and subversive advocacy" admitted during a capital-sentencing proceeding, "where such evidence was relevant to the issues involved."   *Id.* (citing *Barclay v. Florida*, 463 U.S. 939 (1983)).   The Court then concluded that there was no per se constitutional prohibition on "the admission of evidence concerning one's beliefs and associations at sentencing," despite the First Amendment protections given those beliefs and associations.  *Id.* at 165.

*Dawson* provides mixed support for Petitioner's argument.   Arguably, any evidence that Petitioner has tattoos showing swastikas or support for the Aryan Brotherhood was unrelated to his charges, which involve only reckless driving based on his ingestion of drugs.   There is no inherent racial or social element to that crime, and the prosecution provided no evidence at trial of Petitioner's involvement with that gang or a relation between his beliefs and the accident.   On the other hand, the Court in *Dawson* noted that in some cases, this kind of "associational evidence" could suggest that Petitioner "represents a future danger to society.   A defendant's membership in an organization that endorses the killing of any identifiable group, for example, might be relevant to a jury's inquiry into whether the defendant will be dangerous in the future."   *Dawson*, 503 U.S. at 166.   Thus, the evidence may have been proper to allow the jury to consider Petitioner's risk of recidivism or future dangerousness.

Even assuming, for the sake of argument, that this evidence was improper and that counsel should have objected to the prosecutor's questioning about it, Petitioner has not shown that counsel's actions prejudiced him.   Before the prosecution's arguably improper line of questioning about

11

Petitioner's tattoos, the State had introduced evidence of Petitioner's lengthy criminal history, including four convictions of burglary, one conviction of robbery, one conviction of felony escape, and one conviction for evading arrest.  Doc. 4-13 at 31.  He thrice had been convicted of possessing a controlled substance and once for driving while intoxicated.  *Id.* at 31–32.  The victim of the robbery testified that Petitioner had stuck a box cutter with an exposed blade to her side and said to her, "Don't make me hurt you."  *Id.* at 39.  Petitioner also had mixed success while on parole: He was on parole at the time of the accident, yet he had failed to install an ignition-interlock device on any of his various vehicles, including the truck involved in the accident, to prevent him from driving while impaired.  *Id.* at 32–34, 36.

To show prejudice, Petitioner must demonstrate a reasonable probability that, but for his counsel's errors, he would have received a "significantly less harsh" sentence.  *See Dale v. Quarterman*, 553 F.3d 876, 880 & n.2 (5th Cir. 2008); *United States v. Grammas*, 376 F.3d 433, 438 n.4 (5th Cir. 2004).  Amidst the wealth of aggravating evidence provided in this case, Petitioner fails to support his supposition that the questions about his tattoos are what led to his 75-year sentence.  Consequently, this ground for relief also fails.

4.    Conclusion

Having independently reviewed the entire state-court record, this Court finds nothing unreasonable in the state court's application of clearly established federal law or in the state court's determination of facts in light of the evidence.  Accordingly, the Court is of the opinion that 28 U.S.C. § 2254, as amended by the AEDPA, bars habeas corpus relief on Petitioner's claim that he received ineffective assistance of trial counsel.

12

**RECOMMENDATION**

It is recommended that Petitioner's application for writ of habeas corpus be denied.

**CERTIFICATE OF APPEALABILITY**

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, effective December 1, 2009, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the dismissal or denial of the Petitioner's section 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)

(citing *Slack*, 529 U.S. at 484).  Accordingly, it is respectfully recommended that the Court shall not issue a certificate of appealability.

## OBJECTIONS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *See* 28 U.S.C. § 636(b)(1)(C);  *Thomas v. Arn*, 474 U.S. 140, 150–53 (1985); *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415 (5th Cir. 1996)(en banc).

To the extent that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 15th day of July, 2015.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE